UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ahmad Daniel,                                    File No. 22-cv-3184 (ECT/DLM)

    Plaintiff,

v.                                               **OPINION AND ORDER**

Honeywell International Inc.,
Katie Lorentzen, Dawn C. Valdivia,
Tara Hill, and Kyle Swatfager,

    Defendants.

---

Ahmad Daniel, *pro se*.

Brent D. Kettelkamp and Nathan T. Boone, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, MN, for Defendants Honeywell International Inc., Katie Lorentzen, Dawn C. Valdivia, Tara Hill, and Kyle Swatfager.

---

*Pro se* Plaintiff Ahmad Daniel claims that Defendants unlawfully terminated his employment with Defendant Honeywell International because he refused to comply with Honeywell's Covid-19 vaccine and testing requirements. Two motions require a decision. (1) Defendants seek dismissal of Daniel's operative amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (2) Daniel seeks leave to file a second amended complaint pursuant to Rule 15. Defendants' motion will be granted on alternative grounds, including ultimately that Daniel fails to allege any plausible claim. Daniel's motion will be denied because the motion does not comply with governing rules and because, even if it did, Daniel has not identified any proposed amendments that might remedy the dismissal-prompting problems with his operative amended complaint.

*Background facts.* Daniel was a Honeywell employee. Am. Compl. [ECF No. 35] ¶¶ 66–67. During his employment, Honeywell established a COVID-19 vaccination policy. *Id.* ¶¶ 8–9, 12, 17–21, 23–24. Daniel objected to receiving the vaccine on religious grounds, and he sought an exemption. *Id.* ¶¶ 25–26, 85. Honeywell granted Daniel's exemption request. *Id.* ¶¶ 59, 74, 87. Honeywell required unvaccinated employees to follow a Covid-testing protocol in lieu of the vaccine. *Id.* ¶ 44, 62. But Daniel objected to, and refused to comply with, the testing requirement. *Id.* ¶¶ 49, 54, 70. Honeywell deemed Daniel's noncompliance with its COVID-19 policy to be a voluntary resignation, and his employment with the company was terminated. *Id.* ¶¶ 101, 107.

*Daniel's claims.* Daniel asserts many claims. They are, in the order they appear in the amended complaint: (1) a claim under the Minnesota Whistleblower Act, Minn. Stat. §§ 181.931–181.935, *id.* ¶ 1; (2) a claim under the Occupational Health and Safety Administration (or "OSHA") whistleblower provision, 29 U.S.C. § 660(c), *id.*; (3) a claim of religious discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, *id.*; (4) a claim under the Genetic Information Non-Discrimination Act of 2008, 42 U.S.C. § 2000ff, *et seq.*, *id.*; (5) a claim under the Minnesota Genetic Testing in Employment Act, Minn. Stat. § 181.974, *id.*; (6) a claim based on regulations promulgated under the Health Insurance Portability and Accountability Act (or "HIPAA"), which Daniel describes as "45 CFR Parts 160 and 164[,]" *id.*; (7) a claim under the Americans with Disabilities Act (or "ADA"), 42 U.S.C. § 12101, *et seq.*, *id.*; (8) a claim under "Public Law 97-280," a joint congressional resolution that authorized President Reagan to designate 1983 as a national Year of the Bible, *id.*; (9) a claim under the Nuremberg Code, *id.*; (10) a claim under the Fourth

Amendment to the United States Constitution, *id.*; (11) a claim under the Fourteenth Amendment to the United States Constitution, *id.*; (12) a claim under a Minnesota statute regulating the treatment of biological specimens and health data held by the commissioner of the Minnesota Department of Health, Minn. Stat. § 144.192, *id.*; (13) a claim under a Minnesota statute governing the Minnesota Bureau of Criminal Apprehension's collection and analysis of DNA evidence, Minn. Stat. § 299C.155, *id.*; (14) a claim of "unfair labor practices under the National Labor Relations Act (NLRA)[,]" *id.*; *see also id.* ¶ 78; (15) a claim under Minn. Stat. § 181.59, which generally prohibits public entities in Minnesota from discriminating against contractors on account of race, creed, or color, *id.* ¶ 2; (16) a claim under a Minnesota statute repealed in 2007, Minn. Stat. § 144.335, *id.*; (17) a claim under the Minnesota Government Data Practices Act, Minn. Stat. § 13.01, *et seq.*; (18) a claim of religious discrimination under the Minnesota Human Rights Act, Minn. Stat. § 363A.08, subdiv. 2, *id.* ¶ 37; (19) a claim for breach of contract, *id.* ¶ 74; (20) a claim alleging document forgery or falsification under Minnesota and federal criminal statutes, *id.* ¶ 79; and (21) a claim seeking unpaid wages under the "Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and applicable state wage and hour laws[,]" *id.* ¶ 81.

  *Fed. R. Civ. P. 8(a)(2).*  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2) is a procedural pleading requirement that "has the force of law." *Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011). "The words 'short and plain' are themselves short and plain, and they mean what they say: A complaint must be concise, and it must be clear."  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012). Daniel's Amended Complaint violates Rule 8(a)(2). It is not short. It is 118 paragraphs long and includes (at least) 21 claims. Nor does it provide a plain, clear statement of Daniel's grievances. The liability-prompting factual allegations are not clearly described, and the document see-saws between facts and legal theories in ways that make it extremely difficult to follow. The pleading does not, in other words, intelligibly connect facts to claims. The entire Amended Complaint would be dismissed on this basis alone.[1] One specific claim will be dismissed on this basis only: Daniel's claim under "45 CFR parts 160 and 164." Am. Compl. ¶ 1. These parts are voluminous and impose innumerable requirements. Daniel's wholesale reference to both parts does not give any Defendant fair notice of the legal basis for his claim or claims under these regulations.

*Daniel's failure to file a memorandum of law in response to Defendants' motion.* By local rule, Daniel was required to file a memorandum of law in response to Defendants'

---

[1] The Amended Complaint suffers from another procedural flaw. It is unsigned. *See* Am. Compl. at 30; *see also* Fed. R. Civ. P. 11(a). Because the record does not show that the absence of a signature has been called to Daniel's attention, the pleading will not be stricken on this basis. Fed. R. Civ. P. 11(a).

4

motion. D. Minn. LR 7.1(c)(2). Daniel filed no memorandum. He did file a motion seeking leave to amend his complaint a second time. ECF No. 46. But nothing about that Rule 15 motion responds in kind to Defendants' Rule 12(b)(6) motion. Daniel's failure to respond to Defendants' motion constitutes a waiver, and (as with the Rule 8(a)(2) justification) the motion would be granted on only this basis. *See Hernandez-Diaz v. Equifax Info. Servs.*, No. 22-cv-2302 (JRT/JFD), 2023 WL 2025123, at *2 (D. Minn. Feb. 15, 2023) ("As a preliminary matter, the Court interprets a failure to respond to a motion to dismiss as a waiver and voluntary dismissal of those claims."); *see also Cox v. Harpsted*, No. 22-cv-0478 (PJS/DJF), 2022 WL 16541087, at *1 (D. Minn. Oct. 28, 2022) (accepting report and recommendation and agreeing that the plaintiff's "failure to respond to defendants' motion to dismiss amounts to waiver").

*Fed. R. Civ. P. 12(b)(6)'s basic standards.* In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the challenged complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy, Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Daniel's claims that lack a private right of action.* Several of Daniel's claims fail because the statute or other authority under which Daniel sues lacks any private right of action. This is true with respect to Daniel's claim under the joint congressional resolution authorizing President Reagan to designate 1983 as a national Year of the Bible. *See Greenberg v. Bush*, 150 F. Supp. 2d 447, 450–51 (E.D.N.Y. 2001) (concluding that joint resolution stating in part that "the United States of America favors the establishment in Palestine of a national home for the Jewish people" created no private right of action). This also is true with respect to his claim under the Nuremberg Code. *See Leitgeb v. Sark Wire Corp. - GA*, No. 22-13683, 2023 WL 5607882, at *3 (11th Cir. Aug. 30, 2023) ("Because [the plaintiff] fails to reference any statute that provides a private right of action for a Nuremberg Code violation, we conclude that the district court did not err in dismissing his claim under the Nuremberg Code."). The same can be said with respect to the federal and state criminal statutes on which Daniel relies. *Horde v. Elliot*, No. 17-cv-800 (WMW/SER), 2018 WL 987683, at *17 (D. Minn. Jan. 9, 2018) (finding no private right of action in 18 U.S.C. § 1001); *Wilson v. McRae's US Mail Serv. Inc.*, No. 20-cv-1664 (PJS/KMM), 2020 WL 6808861, at *5 (D. Minn. Oct. 29, 2020), *report and recommendation adopted*, 2020 WL 6802395 (D. Minn. Nov. 19, 2020) (recognizing that, in Minnesota, "[a] criminal statute does not give rise to a civil cause of action unless the statute expressly or by clear implication so provides." (quoting *Summers v. R & D Agency, Inc.*, 593 N.W.2d 241, 245 (Minn. Ct. App. 1999))). The OSHA provision under which Daniel seeks to sue, 29 U.S.C. § 660(c), generally "protects individuals from retaliation for filing reports with OSHA of workplace violations." *Growth v. Taylor Cable Prods., Inc.*,

6

No. 12–351–NKL, 2012 WL 2921854, at *2 (W.D. Mo. July 17, 2012). But it vests enforcement authority exclusively with the Secretary and provides no private right of action. 29 U.S.C. § 660(c)(2)–(3); *see Taylor v. Otis Elevator Co.*, No. 21-cv-00203 (SRN/ECW), 2022 WL 270885, at *3 n.4 (D. Minn. Jan. 28, 2022) (citing cases). And, while the notion is an imperfect fit with the usual private-right-of-action analysis, Minn. Stat. § 144.335 was repealed in 2007 and therefore cannot provide a cause of action—private or otherwise—for conduct occurring many years after that repeal.

*Daniel's claims that might only be asserted against a state actor.* Daniel asserts several claims that may be asserted only against a state actor in the concept's traditional sense. Daniel's claims under the federal Constitution's Fourth and Fourteenth Amendments plainly fall within this rule. *Sabri v. Whittier All.*, 122 F. Supp. 3d 829, 838 (D. Minn. 2015). The Amended Complaint includes no allegations hinting that any Defendant might have engaged in conduct fairly attributable to the state. *Id.*[2] Other statutes on which Daniel relies may not fit into a traditional "state actor" analysis, but their plain text imposes duties only on state actors. Several statutes cited in Daniel's Amended Complaint fall in this category. These include claims under Minn. Stat. § 144.192 (regulating the Minnesota Department of Health commissioner's treatment of biological specimens and health data held by her); Minn. Stat. § 299C.155 (governing the Minnesota Bureau of Criminal Apprehension's collection and analysis of DNA evidence); Minn. Stat.

---

[2]     Honeywell admits it is a federal contractor but does not specify the extent of its federal work or whether Daniel was involved in federal work. Defs.' Mem. in Supp. [ECF No. 39] at 4, 23. Regardless, pleading that Honeywell and the individual Defendants are state actors was Daniel's responsibility.

§ 181.59 (prohibiting public entities in Minnesota from discriminating against contractors on account of race, creed, or color); and Minn. Stat. § 13.01, *et seq.* (regulating government data practices). The Amended Complaint includes no allegations connecting any Defendant to any of these governmental units.

*Daniel's claims that lack plausible factual support.* Daniel's remaining claims fail because Daniel does not allege facts plausibly showing the presence of an essential element or elements with respect to each claim.

- To plead a claim under the Minnesota Whistleblower Act, Daniel must allege facts plausibly showing that Defendants (or any one of them) "took adverse employment action against [him] because []he engaged in statutorily protected conduct[.]" *Sellner v. MAT Holdings, Inc.*, 859 F.3d 610, 614 (8th Cir. 2017) (quoting *Fjelsta v. Zogg Dermatology*, 488 F.3d 804, 808 (8th Cir. 2007)). A close, paragraph-by-paragraph review of the operative amended complaint shows that Daniel does not allege he engaged in protected conduct. Nowhere does Daniel intelligibly allege, for example, that he made a good faith report of a suspected violation of law to Honeywell. *See id.* Nor does he allege any causal connection between any such report and his termination.

- Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious

8

observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* at § 2000e(j). Daniel appears to assert a failure-to-accommodate theory. He alleges Defendants' refusal to excuse his compliance with testing requirements that Honeywell imposed on unvaccinated employees was discriminatory. To survive Defendants' motion, Daniel must allege facts plausibly showing that he (1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed Honeywell of this belief, and (3) was disciplined for failing to comply with the conflicting requirement. *Kiel v. Mayo Clinic Health Sys. Se. Minn.*, --- F. Supp. 3d ---, Nos. 22-1319 (JRT/ECW), 22-1327 (JRT/ECW), 22-1405 (JRT/ECW), 22-1420 (JRT/ECW), and 22-1427 (JRT/ECW), 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023) (citing *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003)). Daniel does not allege facts plausibly showing the first element. He alleges that Honeywell's "testing protocols . . . violated [his] religious belief and concerns related to genetic information." Am. Compl. ¶ 57. But he does not allege why or how this is so. At points in the Amended Complaint, Daniel refers to the genetic nature of the testing, his legal rights under "GINA and HIPAA laws," and

"God's dietary laws," but he does not describe his concerns in a way that plausibly connects them to a religious belief. *Id.* ¶¶ 43, 57, 70.[3]

- There is some question whether a failure-to-accommodate-religion claim is cognizable under the MHRA. *See Tipcke v. Olmsted Med. Ctr.*, No. 22-cv-2470 (ADM/JFD), 2023 WL 2776098, at *3–5 (D. Minn. Apr. 4, 2023); *Shane v. Bio-Techne Corp.*, No. 22-cv-3039 (JWB/ECW), 2023 WL 3936638, at *4 (D. Minn. June 9, 2023). Regardless, Daniel's MHRA religious discrimination claim would fall with his Title VII claim. This is because Title VII and MHRA claims are generally analyzed together. *Said v. Mayo Clinic*, 44 F.4th 1142, 1147 n.6 (8th Cir. 2022) ("Claims of discrimination under the MHRA are analyzed under the same standard as Title VII discrimination, using the same federal case law."); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) ("The same analysis applies to both Title VII and MHRA claims.") (collecting cases).

- Daniel's claim under the Genetic Information Non-Discrimination Act of 2008 (or "GINA"), 42 U.S.C. § 2000ff, *et seq.*, is difficult to understand. The basic law governing this claim was well-summarized by Magistrate Judge Alice R. Senechal of the United States District Court for the District of North Dakota:

---

[3] If it mattered, Daniel's Title VII claim would be dismissed as to the individual defendants because Title VII provides no cause of action against supervisors, coworkers, or managers—just an employer. *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008).

> "GINA prohibits an employer from discriminating or taking adverse actions against an employee 'because of genetic information with respect to the employee.'" *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) (quoting 42 U.S.C. § 2000ff-1(a)(1), (2)). "For purposes of GINA, 'genetic information' means information about 'genetic tests' of an individual or h[is] family members, and information about 'the manifestation of a disease or disorder in family members of such individual.'" *Id.* (quoting 42 U.S.C. § 2000ff(4)(A)). ["]The term 'genetic test' means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A). "The term 'genetic test' does not mean an analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes." *Id.* § 2000ff(7)(B).

*Gross v. N.D. Univ. Sys.*, 3:21-cv-206, 2022 WL 2612121, at *3 (D.N.D. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 2612120 (Feb. 9, 2022). Daniel pleads himself out of this claim. He alleges that he refused COVID-19 testing that would have been genetic in nature. *See* Am. Compl. ¶¶ 43, 57. In other words, even assuming these tests would have produced genetic information for GINA's purposes, Daniel was never tested, meaning Honeywell had no "genetic information" it might have relied on to take adverse action against Daniel.

- Evaluating Daniel's claim under the Minnesota Genetic Testing in Employment Act, Minn. Stat. § 181.974, requires comparing the Act's coverage scope with Daniel's allegations. As relevant here, the Act says that an employer may not "administer a genetic test or request, require, or collect

11

protected genetic information regarding a person as a condition of employment[.]" *Id.*, subdiv. 2(a)(1). The Act assigns the term "genetic test" precise meaning:

> "Genetic test" means the analysis of human DNA, RNA, chromosomes, proteins, or certain metabolites in order to detect disease-related genotypes or mutations. Tests for metabolites fall within the definition of genetic test when an excess or deficiency of the metabolites indicates the presence of a mutation or mutations. Administration of metabolic tests by an employer or employment agency that are not intended to reveal the presence of a mutation does not violate this section, regardless of the results of the tests. Test results revealing a mutation are, however, subject to this section.

*Id.*, subdiv. 1(a). As compared with this definition, Daniel's allegations are conclusory. Though he asserts that the testing he would have been required to undergo was genetic in nature, *see* Am. Compl. ¶¶ 43, 57, 70, he does not allege or explain why this is so or how his understanding of the tests' genetic nature falls within the Act's precise coverage.

- Daniel's ADA claim fails. Regardless of the theory underlying this claim, Daniel must allege that he suffered from a disability. *See Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711–12 (8th Cir. 2003); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc). Daniel does not allege that he suffered from a disability. He alleges only that his objections to Honeywell's vaccination policy were religious in nature. He

does not allege anywhere that his objections were somehow rooted in a disability.

- Daniel's claim under the NLRA is the subject of several factual allegations, including that Daniel is a "member[] in Teamsters Local Union No. 1145," Am. Compl. ¶ 10, that Honeywell's vaccination policy may or may not have applied to employees covered under a collective bargaining agreement (or "CBA"), *id.* ¶ 12, that the CBA covering Daniel subjected disciplinary actions "to the grievance procedure contained within" the document, *id.* ¶ 13, and that that the union "is diligently seeking for [Daniel's] employment to be reinstated[,]" *id.* ¶ 14; *see also id.* ¶¶ 16, 78, 115–116. Daniel, however, does not connect these allegations in a way that identifies the assertedly unfair labor practice or describes the basis for a claim under the NLRA. He does not describe an intelligible theory of relief.

- The breach-of-contract claim fails for the straightforward reason that Daniel does not allege the existence of a contract or its breach. *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (identifying the elements of a breach-of-contract claim under Minnesota law as ꞉ "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant[]").

- The Amended Complaint includes one reference to Daniel's wage claims. It reads: "Unpaid Ages Action: Defendant Honeywell . . . failed to pay [Daniel]

13

for the periods they were placed on unpaid leave. Applicable law: [FLSA], 29 U.S.C. §§ 201-219, and applicable state wage and hour laws." Am. Compl. ¶ 81. The pleading includes no other allegations that might enable a reader to determine the timing or extent of Daniel's "unpaid leave," why Daniel believes he should have been paid during this leave, or what Daniel believes he should have been paid. The absence of these allegations renders Daniel's allegation that he was not paid conclusory and insufficient to plausibly support the claim.

*Daniel's motion for leave to amend.* A federal court must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Though Rule 15 describes a liberal standard, the right to amend is not absolute. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (citation omitted). A proposed amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss. *Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). Daniel's motion will be denied for essentially two reasons. (1) The motion did not comply with two Local Rules. *See Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 726 (D. Minn. 2015). The motion violated D. Minn. LR 7.1(b). This rule requires a party filing a nondispositive motion to file a notice of hearing, memorandum of law, a meet-and-confer statement, and a proposed order. Daniel filed none of these materials. He filed only a motion. ECF No. 46. The motion also violated

D. Minn. LR 15(b). This rule requires a party filing a motion to amend to file a version of the pleading that shows how the proposed amended pleading differs from the operative pleading (such as redlining, underlining, strikeouts, etc.). Daniel did not file this document. *See Yohannes v. Minn. IT Servs.*, No. 21-cv-620 (PJS/ECW), 2022 WL 2788397, at *8 (D. Minn. July 15, 2022) ("Plaintiff has failed to follow Local Rule 15.1(b) by not filing a redline copy of the proposed amended complaint. As such, the Court denies the entire Motion to Amend on this additional basis, as well as based on Plaintiff's failure to follow Local Rule 7.1 with respect to obtaining a hearing date before filing the Motion to Amend."). (2) Daniel's proposed second amended complaint does not address the problems with his first amended complaint. If anything, it compounds them. The proposed pleading is 56 pages long and includes 253 paragraphs. *See* ECF No. 46-1. The additional information included in the document does not address or remedy the dismissal-prompting problems with Daniel's first amended complaint. Parties should generally "not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim." *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999).

*Dismissal with or without prejudice?* "[C]ourts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal." *Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1080 (D. Minn. 2021). Dismissal with prejudice is often appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend. *See Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013). On the other hand, when a plaintiff's claims "might conceivably be repleaded with success," dismissal without prejudice may be

justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).  The better answer here is to dismiss Daniel's amended complaint with prejudice.  Daniel was given one opportunity to amend, and as described above, each of his many claims nonetheless fails for a basic reason or reasons.  The fundamental character of these pleading failures, the lack of a response to Defendants' motion, and Daniel's inability to remedy the pleading problems with his second amended complaint all favor concluding that Daniel is not capable of repleading his claims with success or at least that he has had an adequate chance to do so.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 37] is **GRANTED**;

2. Plaintiff's Motion to Amend Complaint in Response to Defendants' Motion to Dismiss [ECF No. 46] is **DENIED**; and

3. The Amended Complaint [ECF No. 35] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 2, 2023               s/ Eric C. Tostrud
                                      Eric C. Tostrud
                                      United States District Court